# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AGUSTIN JIMENEZ, et al.,

    Plaintiffs,

v.                                                       Case No. 19-CV-1623

ILLINI PRECAST, LLC, et al.,

    Defendants.

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Agustin Jimenez, Leopoldo Jimenez, Ginder Rivera Lopez, Everardo Estrada Torres, Omar Arreguin Nunez, and Christopher Buss (collectively "the plaintiffs") sued Illini Precast, LLC and Craig Wegenbach (collectively "the defendants") alleging the defendants improperly classified them as exempt employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, thus erroneously denying them their earned wages and overtime compensation. (Docket # 36.) After three years of litigation, the parties successfully resolved the dispute regarding the plaintiffs' unpaid overtime, liquidated damages, and litigation costs. (Docket # 61 at 1–2.) The parties have not resolved, however, the amount of attorneys' fees due to plaintiffs' counsel. (*Id.* at 2.) The matter is now before me for a recommendation on Plaintiffs' motion for attorneys' fees.

Plaintiffs ask for an award of attorneys' fees in the amount of $176,252.50 for fees incurred through August 16, 2022 (*id.*), as well as $9,540.00 for time spent during August 18, 2022 through September 7, 2022 (Docket # 70 at 25), and for the projected amount of $2,700.00 to account for the additional attorney time that will be required to complete the

Confidential Global Settlement Agreement and file the appropriate pleadings to complete the litigation (*id.*). While the defendants do not dispute that the plaintiffs are entitled to some attorneys' fees, they argue that the plaintiffs' requested amount is excessive and should be reduced to $72,090.00. (Docket # 69.). For the reasons explained below, I recommend that the plaintiffs' motion for attorneys' fees be granted in part and denied in part.

1.  *Legal Standard*

Under the FLSA, the "prevailing party" is entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *Johnson v. GDF, Inc.*, 668 F.3d 927, 930 (7th Cir. 2012). The general rule for calculating attorneys' fee awards under fee shifting statutes is applicable to attorneys' fees awards under the FLSA. *See Johnson*, 668 F.3d at 931; *Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). The starting point for determining reasonable attorneys' fees is the lodestar method, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted); *Pickett*, 664 F.3d at 639. However, once the lodestar is determined, the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained. *Hensley*, 461 U.S. at 430, n.3, 436. The other factors to be considered as delineated by the Supreme Court are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (citing *Hensley*, 461 U.S. at 441). In sum, "[t]he standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999). The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *Id.* (internal quotation and citations omitted).

  2. *Whether Plaintiffs Are "Prevailing Parties" Under the FLSA*

As an initial matter, while the FLSA makes an award of attorneys' fees mandatory for the prevailing party, the statute also provides that the reasonable attorneys' fees are awarded "*in addition* to any judgment awarded to the plaintiff or plaintiffs." 29 U.S.C. § 216(b) (emphasis added). In other words, to be a "prevailing party" under the statute, "the FLSA requires a favorable judgment before a plaintiff becomes entitled to attorney fees." *Fast v. Cash Depot, Ltd.*, 931 F.3d 636, 640 (7th Cir. 2019). Although the statute uses the term "judgment," following the Supreme Court's precedent interpreting fee-shifting provisions in other federal statutes, the Seventh Circuit found that in FLSA cases, a favorable "judgment"

includes "a judgment in his favor, a court-approved settlement, or some other favorable resolution with a 'judicial imprimatur.'" *Id.* at 639 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–05 (2001)). In *Buckhannon*, the Supreme Court held that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." 532 U.S. at 604.

On the record currently before me, there is no settlement agreement enforced through a consent decree. Rather, plaintiffs argue that "[u]pon final approval of the Parties' settlement by this Court, Plaintiffs *will have obtained* the necessary judicial relief such that this Court should award Plaintiffs' counsel's attorneys' fees . . . ." (Docket # 61 at 8) (emphasis added). The fact that there is no consent decree is neither academic nor semantic, but a matter of statutory condition precedent. On this record, plaintiffs are *not* statutorily entitled to attorneys' fees. And until a consent decree is entered approving their settlement agreement, plaintiffs will remain unable to obtain attorneys' fees under the FLSA. Thus, the remainder of this recommendation is premised on the assumption that plaintiffs will become "prevailing parties" at some point in the future. However, to the extent that a consent decree is not obtained, I recommend the plaintiffs' motion be denied.

3.  *Calculation of the Lodestar*

The plaintiffs seek fees for the work of two attorneys. First, they request 371.80 hours at a rate of $350/hour in 2019; $400/hour in 2020; and $450/hour in 2021 and 2022 for Attorney Robert M. Mihelich. Next, they request 47.70 hours at a rate of $325/hour[1] for Attorney Kevin M. Scott.

---

[1] Although the plaintiffs' opening brief states Attorney Scott's hourly rate was $400/hour in 2022 (Docket # 61 at 2), plaintiffs clarify in their reply brief that Attorney Scott's billing rate remained $325/hour through August 4, 2022 (Docket # 70 at 3).

4

### 3.1 Hourly Rate

While defendants do not challenge Attorney Scott's hourly rate of $325/hour (Docket # 69 at 11), they challenge Attorney Mihelich's hourly rate to the extent it exceeds $350/hour (*id.* at 9–11).

The determination of an attorney's "reasonably hourly rate" is to be based on the "market rate" for the services rendered. *Spegon*, 175 F.3d at 554. The burden of proving the "market rate" is on the fee applicant; however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded. *Id.* at 554–55. An attorney's "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* at 555 (internal quotation and citation omitted). Furthermore, the "attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Id.* If the district court is unable to determine the attorney's actual billing rate because, for example, the attorney has no fee-paying clients, then the district court should look to the next best evidence. *Id.* The next best evidence of an attorney's market rate includes evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases. *Id.*

Again, the defendants do not challenge Attorney Mihelich's 2019 billing rate of $350/hour. (Docket # 69 at 4.) Thus, the issue is whether the plaintiffs have shown that Attorney Mihelich's billing rates of $400/hour in 2020 and $450/hour in 2021 and 2022 are reasonable. Attorney Mihelich has practiced law in Wisconsin for over twenty-nine years and has dedicated the last approximately twenty-six years to employment-related claims.

5

(Declaration of Robert M. Mihelich in Supp. of Pls.' Mot. for Attorneys' Fees ("Mihelich Decl.") ¶¶ 7, 10, Docket # 62.) Attorney Mihelich avers that although he was retained by the plaintiffs on a contingency fee arrangement in this case (*id.* ¶ 21), he charges the same hourly rate for paying clients as he does in contingency fee cases (*id.* ¶ 17). He states that his increase in hourly rate from $350/hour in 2019 to $450/hour in 2021 was justified "to conform to the hourly rates of other attorneys in my geographic market that had similar or less years of experience and who focused their practice in the area of employment law, specifically wage collection cases." (*Id.*)

In support of his hourly rate, Attorney Mihelich provides an invoice dated August 16, 2022 addressed to plaintiff Agustin Jimenez, containing his work on the case dating back to 2019. (Mihelich Decl. ¶ 3, Ex. A, Docket # 62-1.) This invoice contains the hourly rates for each year as articulated above. Although Attorney Mihelich avers that he charges the same hourly rate to both his paying clients and his contingent fee clients, he acknowledges that the plaintiffs in this case retained him on a contingent fee basis and to date, he has not received any compensation for his time spent on this case. (*Id.* ¶ 22.) As such, Attorney Mihelich has not sufficiently established his "actual billing rate" to allow me to find that the rates listed on his bill are "presumptively appropriate." Thus, I turn to the "next best evidence"—the rates of similarly experienced attorneys in the community.

The plaintiffs provide the declarations of three attorneys in support of Attorney Mihelich's hourly rates. First, Attorney Scott Luzi avers that he has twelve years of experience and has represented hundreds of individuals in employment law matters, including recovery of unpaid wages. (Declaration of Scott S. Luzi ("Luzi Decl.") ¶¶ 2, 5, Docket # 66.) Attorney Luzi states that prior to June 1, 2019, he billed $350/hour; from

June 1, 2019 to February 28, 2022, he billed $400/hour; and since March 1, 2022, he has billed $450/hour. (*Id.* ¶ 7.) Second, Attorney James Walcheske, who is currently the managing partner of a firm with Attorney Luzi, avers that he has fourteen years of experience and has devoted his entire professional career to employment law, including wage and hour litigation in federal court. (Declaration of James A. Walcheske ("Walcheske Decl.") ¶¶ 2, 4, 6, Docket # 64.) Attorney Walcheske states that in 2019, he billed at the rate of $400/hour and currently bills at a rate of $450/hour. (*Id.* ¶¶ 9, 11.) Finally, Attorney Larry Johnson avers that he has sixteen years of experience representing numerous individuals in efforts to recover unpaid wages under both state and federal law. (Declaration of Larry A. Johnson ("Johnson Decl.") ¶¶ 2, 5, Docket # 65.) Attorney Johnson currently bills at a rate of $400/hour for multi-plaintiff wage and hour cases litigated under the FLSA. (*Id.* ¶ 7.)

There is a dearth of authority supporting a reasonable hourly fee rate of $450/hour. In *Stephani v. JC Sols.*, a judge in this district did approve an hourly rate of $450/hour for Attorneys Walcheske and Luzi; however, the defendant in that case appeared *pro se* and failed to respond to the plaintiff's fee motion. No. 21-C-458, 2022 WL 4017413, at *1 (E.D. Wis. Sept. 2, 2022). And the only evidence the judge had in support of Attorneys Walcheske's and Luzi's fee rates was the declaration of Attorney Mihelich stating that the requested rate was in line with what was normally charged for similar services by other practitioners. *Id.* Attorney Luzi, however, cites to multiple cases in both the Eastern and Western Districts of Wisconsin in which his "historic rate of $400.00 per hour" was found reasonable in both single and multi-plaintiff wage and hour cases under the FLSA and WWPCL. (Luzi Decl. ¶ 8.) This list includes multiple cases decided in early 2022,

7

presumably before Attorney Luzi's hourly rate increased to $450/hour on March 1, 2022. (*Id.* ¶ 7.) Attorney Walcheske similarly cites to multiple cases in both Wisconsin districts approving his rate of $400/hour. (Walcheske Decl. ¶ 11.)

Given this evidence, I find that Attorney Mihelich's hourly rate of $350/hour in 2019 was reasonable. I further find that his hourly rate of $400/hour in 2020 was reasonable and in line with other practitioners, even those with less experience. I do not, however, find that the hourly rate of $450/hour is reasonable for either 2021 or 2022. To begin, Attorney Mihelich's hourly rate increased by $50/hour for three consecutive years. That represents an increase of just over 14% in 2020 and of 12.5% in 2021. This sharp increase in such a short period of time is questionable. *See Prather v. Sun Life & Health Ins. Co. (U.S.)*, 852 F.3d 697, 700 (7th Cir. 2017) (reducing an attorney's billing rate from $630 to $620, on the ground that the $630 rate reflected an excessive rate increase of 5% from his hourly rate of $600 in 2015). Furthermore, beyond Attorneys Luzi and Walcheske, who are partners at the same firm, Attorney Johnson, who has more experience than both Attorneys Luzi and Walcheske, continues to bill at a rate of $400/hour for multi-plaintiff wage and hour cases litigated under the FLSA. (Johnson Decl. ¶ 7.) For these reasons, I find that a rate of $400/hour for Attorney Mihelich is reasonable for his work conducted in 2020, 2021, and 2022.

### 3.2 Number of Hours Expended

Two attorneys spent almost 442 hours litigating this case over a three-year period, with Attorney Mihelich spending 393 hours and Attorney Scott spending 47.70 hours. (Docket # 61 at 2; Docket # 71-1.) The defendants argue that plaintiffs' counsel's bills should be cut to 258 hours, with 250.5 hours for Attorney Mihelich and 7.5 hours for

8

Case 2:19-cv-01623-JPS   Filed 09/28/22   Page 8 of 19   Document 73

Attorney Scott. (Docket # 69 at 27.) Defendants argue several reasons that support cutting the attorneys' hours—(1) excessive use of block billing; (2) vague billing entries; (3) failing to exercise billing discretion; (4) billing for administrative tasks; and (5) excessive time conferring with co-counsel. (*Id.* at 12–21, 23–24, 25–27.) Defendants further argue that plaintiffs should not be allowed to recover time spent (1) communicating with the mediator after an unsuccessful mediation; (2) preparing for a deposition that did not take place; (3) responding to defendants' motion to dismiss for failure to prosecute; and (4) researching the issue of successor liability. (*Id.* at 21–23, 24–25.) I will address each category of arguments in turn.

### 3.2.1 General Billing Practices

The Supreme Court has cautioned that a request for attorneys' fees should not result in a second major litigation. *Hensley*, 461 U.S. at 437. Attorneys must exercise "billing judgment" with respect to the hours requested and "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* Defendants' first category of arguments effectively challenge plaintiffs' counsel's billing practices. They argue that counsel engaged in practices that prevent proper review of the bills, i.e., by block billing, drafting vague entries, and failing to use billing judgment by billing for administrative tasks and excessive inter-office conferences. Defendants argue that the Court should issue an across-the-board reduction of 20% to account for plaintiffs' counsel's improper billing practices. (Docket # 69 at 15.)

Beginning with the issue of block billing, Defendants argue that plaintiffs' counsel's billing records are so extensively block billed that it is difficult to evaluate the reasonableness of the time expended on any particular task. (Docket # 69 at 14–15.) Plaintiffs' counsel

9

vehemently denies engaging in any sort of block billing. (Docket # 70 at 9.) However, there is no question, despite his assertions to the contrary, that plaintiffs' counsel engages in excessive block billing. To cite just one example, Attorney Mihelich's entry on October 29, 2019 is for 5.50 hours for the following:

> Review file, including client notes, client information, information regarding defendants, and draft overtime Opt-In Complaint. Review and revise. Draft Certificate of Interest, Civil Cover Sheet, and Summons' for each defendant. Draft Consent Form. Review and revise all drafts. Email to clients with draft of Complaint and Consent Form attached with instructions. Telephone call to Agustin Jimenez regarding [redacted]. Text exchange with Vickie (Omar) Nunez regarding [redacted].

(Docket # 62-1 at 3.) This entry contains eight discrete tasks—(1) Review file, including client notes, client information, information regarding defendants; (2) Draft overtime Opt-In Complaint; (3) Review and revise Complaint; (4) Draft Certificate of Interest, Civil Cover Sheet, and Summons' for each defendant. Draft Consent Form; (5) Review and revise all drafts; (6) Email to clients with draft of Complaint and Consent Form attached with instructions; (7) Telephone call to Agustin Jimenez; and (8) Text exchange with Vickie (Omar) Nunez.

But block billing, in and of itself, is not a prohibited practice. *See Novoselsky v. Zvunca*, No. 17-CV-427-JPS, 2018 WL 941731, at *4 (E.D. Wis. Feb. 16, 2018) (citing *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006)). And when an entry, though block billed, generally represents related and compensable tasks, the block billing is relatively harmless. *See Alberth v. S. Lakes Plumbing & Heating, Inc.*, No. 19-CV-62, 2021 WL 2779038, at *5 (E.D. Wis. July 2, 2021). While defendants critique the amount of block billing found in plaintiffs' counsel's bills, defendants do not specify exactly how the block billing, in and of itself, prevents proper court review of the billing entries. For example, if

defendants were challenging the amount of time spent drafting the complaint, but the drafting of the complaint was block-billed amongst multiple other tasks, it would be impossible to review whether the time spent drafting the complaint was reasonable because it would be unclear how much time was spent on that specific task. But because block billing is not itself a prohibited practice, it would be improper to simply issue an across-the-board reduction of hours simply because the majority of counsel's entries are block billed.

Where the problem for the court arises in this case is with defendants' argument that plaintiffs' counsel improperly bills for administrative tasks. Attorney Mihelich's billing records include multiple entries with administrative tasks for which an attorney is not entitled to fees, such as calendaring dates, filing through ECF, updating his to-do list, or re-organizing his file. *See Spegon*, 175 F.3d at 553; *see also Walker v. United Fin. Serv.*, No. 10-C-180, 2010 WL 4942008, at *2 (E.D. Wis. Nov. 30, 2010) (finding that tasks such as opening a file, making entries in the system, creating a client file, checking filing information, preparing correspondence to the process server, or updating the service chart are administrative tasks for which the attorney is not entitled to fees); *Pace v. Pottawattomie Country Club Inc.,* No. 3:07-CV-347 RM, 2009 WL 4843403, at *13 (N.D. Ind. Dec. 11, 2009) ("The court agrees, however, that certain tasks performed were of a clerical nature, such as: sending pleadings to client; review of appearances, summons, waiver of service and other similar documents; payment to EEOC; drafting cover sheets; and filing documents with the court."). Because all of these entries are block billed, it is impossible to simply excise the uncompensable tasks from the compensable ones. For this reason, the following entries will be struck in their entirety—9/24/19; 10/1/19; 10/24/19; 11/5/19; 11/9/19; 11/14/19; 12/3/19; 12/4/19; 12/5/19; 12/17/19; 12/20/19; 1/17/20; 6/18/20; 6/19/20;

11

Case 2:19-cv-01623-JPS    Filed 09/28/22    Page 11 of 19    Document 73

7/1/20; 11/6/20; 1/12/21; 1/20/21; 2/9/21; 2/19/21; 3/10/21; 4/28/21; 5/13/21; 7/25/21; 8/1/21; 8/4/21; 5/26/22; 8/2/22; 8/11/22. This corresponds to a reduction of 46.5 hours.

Defendants also challenge plaintiffs' counsel's billing for conferences between Attorneys Mihelich and Scott. They argue that the time is duplicative and thus Attorney Scott's entries should be disregarded. (Docket # 69 at 25–27.) While there is no "blanket rule according to which internal communication time never would be reimbursed," because such internal meetings are "not always the model of efficiency," attorneys seeking reimbursement for internal meetings "should identify explicitly the subject matter of their discussions so that we may assess whether the amount of time recorded was 'reasonably expended.'" *Tchemkou v. Mukasey*, 517 F.3d 506, 511 (7th Cir. 2008).

In this case, all but six of Attorney Scott's forty-two billing entries include a conference with Attorney Mihelich. (Declaration of Kevin M. Scott ("Scott Decl.") ¶ 2, Ex. A, Docket # 63-1.) Attorney Mihelich also billed for the majority of these conferences (*see* entries on 2/19/21; 3/1/21; 3/2/21; 3/3/21; 3/10/21; 3/11/21; 3/15/21; 3/16/21; 3/31/21; 4/1/21; 4/9/21; 5/5/21; 5/13/21; 5/24/21; 6/3/21; 6/4/21; 6/9/21; 6/14/21; 6/15/21; 8/24/21; 10/13/21; 10/27/21; 11/1/21; 7/14/22; 7/15/22). There are, however, some discrepancies between counsel's billing records. For example, Attorney Scott bills 0.4 hours on August 4, 2022 for a conference with Attorney Mihelich (Docket # 63-1 at 3), whereas Attorney Mihelich does not bill any time for August 4, 2022 (Docket # 62-1 at 32). Even putting the discrepancies aside, while conferences between co-counsel undoubtedly can add value to a case, this value becomes questionable when counsel's second chair must confer with primary counsel nearly every single day that he works on the case. Given the

12

frequency of Attorney Mihelich's involvement in Attorney Scott's work, I do not agree that an attorney, properly exercising his billing judgment, would present to his client bills from both counsel. And "hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute such as the FLSA." *Spegon*, 175 F.3d at 552.

Furthermore, Attorney Scott's billing entries, like Attorney Mihelich's, are block billed in such a way that I am unable to discern just how long these conferences between counsel lasted. For this reason, I will cut Attorney Scott's entries where he conferred with Attorney Mihelich as duplicative. Attorney Scott may recover for his entries on 2/21/21; 2/25/21; 2/28/21; 1/25/22; 7/18/22; and 7/19/22, amounting to 6.1 hours.

Finally, defendants generally argue that counsel's billing entries are "vague" and that counsel failed to exercise billing discretion in submitting their bills. (Docket # 69 at 15–21.) I do not find counsel's entries so vague as to warrant further reduction and defendants' argument regarding billing discretion focuses on the issue of successor liability, which will be discussed below.

### 3.2.2 Billing for Specific Unnecessary Items

The defendants also challenge plaintiffs' counsel's billing for certain specific issues that defendants argue are not recoverable. Specifically, time spent communicating with the mediator after an unsuccessful mediation; preparing for a deposition that did not take place; responding to defendants' motion to dismiss for failure to prosecute; and researching the issue of successor liability.

On April 8, 2021, the parties held a private mediation with retired Judge Patrick Fielder. (Docket # 69 at 21.) Defendants assert that plaintiffs' counsel "abruptly" ended the

13

Case 2:19-cv-01623-JPS   Filed 09/28/22   Page 13 of 19   Document 73

mediation and refused to negotiate further because plaintiffs were dissatisfied with defendants' offer. (*Id.*) Plaintiffs seek fees for 1.5 hours speaking to Judge Fielder on April 9, 2021 and April 14 and 15, 2022, after the mediation concluded. (*Id.* at 22.) Defendants argue that plaintiffs should not recover fees for this time. Plaintiffs argue, in contrast, that they terminated the mediation because it was obvious the mediation would not be successful given the defendants' "unreasonably low offer"; thus saving the defendants additional mediator costs. (Docket # 70 at 19.) Plaintiffs contend that counsel contacted Judge Fielder after a trial date was set to determine if the parties could reach a settlement. (*Id.*)

As to the April 9, 2021 date, immediately after the mediation, Attorney Mihelich bills 1.2 hours speaking to Judge Fielder (amongst other tasks, as again, this is block-billed) regarding the "failed mediation," discussing "his impressions and ideas about potential resolution of certain issues, or alternative frameworks for resolving [the] case." (need cite.) A year later, counsel had two brief calls with Judge Fielder on April 14 and 15, 2022 regarding potential mediation. I see no reason to cut this time. A client would expect to pay counsel for his time attempting to settle the case. No reduction is warranted as to this ground.

The defendants also argue that Attorney Mihelich should not recover for the twenty-five hours spent between April 3 and 5, 2022 preparing to depose Doug Wagenbach and Craig Wagenbach, when Craig Wagenbach was not ultimately deposed. (Docket # 69 at 22.) Plaintiffs respond that based on admissions made during Doug Wagenbach's deposition, counsel determined that Craig Wagenbach's deposition was no longer required. (Docket # 70 at 20.) I do not agree that the mere fact the Craig Wagenbach deposition did not ultimately take place is a sufficient reason to disallow compensation for time spent

14

preparing. Plaintiffs' counsel asserts his preparation time related to both depositions. And counsel ultimately reduced his compensable hours by declining to depose Craig Wagenbach after determining his testimony was no longer required. Again, a reduction is not warranted as to this ground.

In June 2020, defendants filed a motion to dismiss for failure to prosecute, asserting that plaintiffs failed to engage in any discovery for the first seven months of the case and actively thwarted defendants' ability to defend their case by refusing to provide information that would enable defendants to properly prepare a defense. (Docket # 20.) Although Judge Stadtmueller denied the defendants' motion without prejudice, he specifically noted that should circumstances warrant, the defendants could renew their motion in the future. (Docket # 27.) Judge Stadtmueller further found that the plaintiffs had "undeniably failed to promptly respond to Defendants' Discovery Requests." (*Id.* at 2.) Judge Stadtmueller further found that because the plaintiffs did not provide discovery responses until *after* the defendants filed a motion to compel, he ordered the plaintiffs to pay the reasonable costs and attorneys' fees associated with the defendants' motion. (*Id.* at 3.)

Plaintiffs contend that they are entitled to recover for their time spent responding to the defendants' motion to dismiss. They argue that had they not contested the motion, the case would have been dismissed. (Docket # 70 at 19–20.) But because they did contest the motion and the motion was denied, this paved the way for plaintiffs to ultimately prevail on their FLSA claims. (*Id.* at 20.) Plaintiffs further argue that the motion to dismiss was "doomed" because defendants acknowledged that it was defendants' burden to prosecute the matter. (*Id.*)

15

Plaintiffs' position is nonsensical. Attorney Stadler does not, in his declaration, admit that "the onus was on the Defendants to prosecute the matter" (*id.*); rather, he states that under the FLSA, where an employer fails to keep the proper and accurate records required by the FLSA, the employer, rather than the employee, bears the consequences of that failure (Declaration of Ronald Stadler ("Stadler Decl.") ¶ 14, Docket # 68.) Attorney Stadler acknowledges that it was undisputed that the defendants failed to keep proper records (*id.* ¶ 13); as such, "throughout this case the burdens fell squarely on Defendants, not Plaintiffs" (*id.* ¶ 16). But this merely supports why it was so important for defendants to obtain discovery from the plaintiffs. And the defendants' motion to dismiss for failure to prosecute was based primarily on plaintiffs' discovery failures. While plaintiffs are correct that defendants' motion was ultimately denied, it was clear Judge Stadtmueller agreed plaintiffs engaged in sanctionable behavior. It would wholly defeat the purpose of Judge Stadtmueller's award of fees as a sanction for plaintiffs' actions to now order the defendants to pay for time litigating a response that should not have been necessary to begin with. As Judge Stadtmueller noted, Attorney Mihelich specifically took "full responsibility for the delay in providing these responses to the Defendants." (Docket # 22.) Thus, Attorney Mihelich should not expect his client to pay for time spent responding to a motion that was filed based on counsel's own admitted lack of diligence. Defendants request I strike the entries on 6/22/20; 6/29/20; and 7/1/20. As the entry on 7/1/20 has already been stricken, I will strike the other two entries and reduce Attorney Mihelich's requested hours by 6.5 hours.

Finally, defendants argue that plaintiffs' counsel should not recover their time spent related to pursuing the successor liability issue. (Docket # 69 at 17–21, 24–25.) To the extent

defendants argue that Attorney Scott's time spent on this issue should be disregarded (*id.* at 24–25), I have already cut the majority of Attorney Scott's time as articulated above. Regarding Attorney Mihelich, defendants argue that this time was not related to whether the defendants violated the FLSA or to their claim for damages, but whether they would somehow be able to recover a judgment against the company that purchased the defendant limited liability company during the pendency of the lawsuit. (Docket # 70 at 16.) I agree that plaintiffs should be able to recover for Attorney Mihelich's time spent on this issue. A client would expect to pay for his attorney's work on how to recover on a judgment. Attorney Mihelich's work allowed the parties to settle with the creation of an escrow agreement securing funds to satisfy the judgment against the defendants. This work is clearly of great value to the clients, unlike a paper judgment against a "judgment proof" entity. Thus, I do not find it appropriate to reduce Attorney Mihelich's bills as to this ground.

    4.  *Additional Fees for Reply Brief and Finishing Settlement*

  Plaintiffs additionally request attorneys' fees in the amount of $9,540.00 for time spent during August 18, 2022 through September 7, 2022 and the "projected amount of $2,700.00 to account for the additional attorney time that will be required in order to complete the Confidential Global Settlement Agreement and file the appropriate pleadings to complete the litigation." (Docket # 70 at 25.) I decline to award plaintiffs attorneys' fees based on a projection. Thus, I recommend the district judge take up this issue if and when these actual fees are incurred.

17

As to the additional hours incurred related to briefing this motion (Supplemental Declaration of Robert M. Mihelich ¶ 3, Ex. 1, Docket # 71-1), I find that the 21.2 hours spent were reasonable and thus will not be reduced.

5. *Final Lodestar Amount*

Neither party argues that the lodestar amount should be adjusted up or down. Rather, as the defendants argue "the issue before the Court is whether the Plaintiffs' hours and billing rates are reasonable." (Docket # 69 at 2.) Thus, in calculating the lodestar amount, I recommend that Attorney Scott recover 6.1 hours at the rate of $325/hour for a total of $1,982.50.

As to Attorney Mihelich, I recommend finding an hourly rate of $350/hour in 2019 and $400/hour in 2020 through 2022. I also recommend finding that he expended the following reasonable hours: 30.8 hours in 2019; 50 hours in 2020; 164.3 hours in 2021; and 81.4 hours in 2022, as well as $9,540.00 for time spent during August 18, 2022 through September 7, 2022. This amounts to the following fees for each year:

| | |
|---|---|
| 2019 | $10,780.00 |
| 2020 | $20,000.00 |
| 2021 | $65,720.00 |
| 2022 | $32,560.00 |
| Add. | $9,540.00 |
| Total | $138,600.00 |

Thus, I recommend awarding plaintiffs $140,582.50 in attorneys' fees, representing $138,600.00 for Attorney Mihelich and $1,982.50 for Attorney Scott.

18

**NOW, THEREFORE, IT IS RECOMMENDED THAT** plaintiffs' motion for attorneys' fees (Docket # 60) be **GRANTED IN PART AND DENIED IN PART** and that plaintiffs be awarded reasonable attorneys' fees in the amount of $140,582.50.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 28th day of September, 2022.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge