# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

AGUSTIN JIMENEZ, LEOPOLDO
JIMENEZ, GINDER RIVERA LOPEZ,
EVERARDO ESTRADA TORRES,
OMAR ARREGUIN NUNEZ, and
CHRISTOPHER BUSS,

                Plaintiffs,

v.

ILLINI PRECAST LLC and CRAIG
WEGENBACH,

                Defendants.

Case No. 19-CV-1623-JPS

**ORDER AND
CONSENT
DECREE**

## 1.    INTRODUCTION

Plaintiffs brought this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"), alleging that Defendants failed to compensate them for all work performed, including at an overtime rate of pay. ECF No. 76 at 1 (citing ECF No. 1). On November 14, 2019, Plaintiffs filed an amended complaint adding additional detail to the allegations in the complaint, ECF No. 6, and on January 20, 2021, Plaintiffs filed a second amended complaint to add Plaintiff Christopher Buss, ECF No. 36.

In August 2022, the parties informed the Court that they had resolved the action as to Plaintiffs' claims and the matter of litigation costs. ECF Nos. 58, 59. The parties reported, however, that they were unable to reach an agreement as to the matter of attorneys' fees. ECF No. 59. The Court set a briefing schedule on Plaintiffs' motion for attorneys' fees (hereinafter, the "fee petition"), *see* August 11, 2022 text order, and after the

fee petition became fully briefed, ECF Nos. 61, 69, 70, referred the matter to Magistrate Judge Nancy Joseph for a report and recommendation, *see* September 8, 2022 text order.

On September 28, 2022, Magistrate Judge Joseph issued her Report and Recommendation ("R&R"), in which she recommends reducing Plaintiffs' requested award of attorneys' fees in the amount of $176,252.50 to $140,582.50. ECF No. 73. Both Plaintiffs and Defendants filed objections to the R&R. ECF Nos. 74, 75. Defendants filed a response to Plaintiffs' objections. ECF No. 78. Plaintiffs did not file a response to Defendants' objections, but did file a reply in further support of their own objections.[1] ECF No. 79. In the time since the R&R was entered and the objections filed, Plaintiffs filed a Civil Local Rule 7(h) expedited motion for supplemental attorneys' fees (hereinafter, the "supplemental fee petition") incurred since the filing of the fee petition. ECF No. 80. Defendants filed their response to the supplemental fee petition on November 22, 2022. ECF No. 82.

Separately, on October 20, 2022, the parties filed a joint motion for entry of a consent decree approving their settlement and a motion to file their settlement agreement in redacted form. ECF Nos. 76, 77.[2] The settlement agreement includes a provision for the payment of Plaintiffs' attorneys' fees, in an amount to be determined by the Court. ECF No. 77-1 at 5.

---

[1] Plaintiffs explain that they did not do so to avoid incurring additional fees, as Plaintiffs contend that Defendants repeat in their objections the same arguments that they made in their underlying opposition brief. ECF No. 79 at 6.

[2] The settlement agreement with proposed redactions is docketed publicly at ECF No. 77-1. A copy of the settlement agreement without redactions is docketed under seal at ECF No. 76-1.

## 2.    ANALYSIS

This Order resolves, in the following order: (1) the parties' joint motion for entry of a consent decree approving their settlement and joint motion to file the settlement agreement in redacted form, ECF Nos. 76, 77; (2) Plaintiffs' fee petition, ECF No. 60, Magistrate Judge Joseph's R&R on Plaintiffs' fee petition, ECF No. 73, and the fully briefed objections thereto, ECF Nos. 74–75, 78–79; and (3) Plaintiffs' supplemental fee petition, ECF No. 80.

For the reasons explained in the body of this Order, the Court grants the parties' joint motion for entry of consent decree approving their settlement and enters a consent decree accordingly; grants the parties' joint motion to file the settlement agreement in redacted form; adopts in part and overrules in part Magistrate Judge Joseph's R&R on Plaintiffs' fee petition, and consequently grants in part and denies in part the underlying fee petition; overrules Defendants' objections to Magistrate Judge Joseph's R&R on Plaintiffs' fee petition and adopts in part and overrules in part Plaintiffs' objections to Magistrate Judge Joseph's R&R on Plaintiffs' fee petition; and grants Plaintiffs' supplemental fee petition. The Court will not consider any further supplemental fee petition, for the reasons also explained in the body of this Order.

### 2.1    The Parties' Joint Motion for Entry of a Consent Decree Approving Their Settlement and Motion to File the Settlement Agreement in Redacted Form

#### 2.1.1    Joint Motion for Entry of a Consent Decree

As Magistrate Judge Joseph explains in the R&R, "the FLSA requires a favorable judgment before a plaintiff becomes entitled to attorney fees." ECF No. 73 at 3 (quoting *Fast v. Cash Depot, Ltd.*, 931 F.3d 636, 640 (7th Cir.

2019)). In FLSA cases, a favorable "judgment" includes "a judgment in [a plaintiff's] favor, a court-approved settlement, or some other favorable resolution with a 'judicial imprimatur.'" *Id.* at 3–4 (quoting *Fast*, 931 F.3d at 639). The U.S. Supreme Court, in defining the term "prevailing party" for purposes of awarding attorneys' fees under fee shifting statutes, has held that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Id.* at 4 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001)).

This District, applying *Buckhannon*, has held that "[a]lthough the FLSA does not contain the phrase 'prevailing party,' the same reasoning would seem to apply." *Fast v. Cash Depot, Ltd.*, No. 16-CV-1637, 2018 WL 5832155, at *2, *4 (E.D. Wis. Nov. 7, 2018) ("Therefore, determining if the plaintiff is a prevailing party [under the FLSA] depends on whether the plaintiff has obtained a 'judicially sanctioned change in the legal relationship of the parties,' such as when the court awards a judgment on the merits or approves a consent decree or a settlement agreement.") (quoting *Buckhannon*, 532 U.S. at 605); *see also Farmer v. DirectSat USA*, No. 08-CV-3962, 2015 WL 13310280, at *1 (N.D. Ill. Sept. 24, 2015) (adjudicating R&R on fee petition following entry of consent decree reflecting the terms of the parties' settlement of six named plaintiffs' FLSA claims).

Thus, the Court agrees with Magistrate Judge Joseph that "[t]he fact that there is no consent decree is neither academic nor semantic, but a matter of statutory condition precedent." *Id.* The Court presumes that Magistrate Judge Joseph mentions a consent decree, instead of settlement approval, as the second amended complaint does not raise any class or collective claims (nor was any class or collective certified), and, as explained

below, the Seventh Circuit has not yet addressed the question of whether a stipulated settlement agreement of individual FLSA claims requires court approval. In other words, absent the parties having moved for entry of a consent decree, there was no certainty that the Court would be required to review the settlement agreement at all or make any determination as to the "prevailing party." Indeed, the R&R is explicitly "premised on the assumption" that a consent decree will be entered approving the settlement agreement and finding Plaintiffs the "prevailing party" for purposes of their entitlement to attorneys' fees. *Id.* Consequently, the Court reviews first the parties' joint motion for entry of a consent decree approving their settlement.

As mentioned, the operative complaint, the second amended complaint, does not plead any class, collective, or representative claims under the FLSA, Federal Rule of Civil Procedure 23, or Wisconsin law, and no class or collective was certified. ECF No. 76 at 2. Thus, the settlement approval process prescribed by Rule 23(e) does not apply. Also as mentioned, "[t]he Seventh Circuit has not addressed the question of whether stipulated agreements under the FLSA require court approval, but district courts in the Seventh Circuit routinely require such approval." *Hoaglan v. Grede Holdings LLC*, No. 20-CV-425-PP, 2022 WL 2703854, at *2 (E.D. Wis. July 12, 2022) (collecting cases). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.* (quoting *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016)). "Normally, a settlement is approved where it is the result of 'contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate

recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. Nov. 1, 2010).

After three years of litigation, during which the parties state that they completed "a significant amount of written discovery and . . . a total of eleven different depositions," the parties report that they agreed to enter into settlement negotiations for the purpose of avoiding the costs and uncertainty of continued litigation. ECF No. 76 at 2; ECF No. 61 at 5. The parties further aver that they have in fact, engaged in good-faith settlement negotiations. ECF No. 76 at 2. All parties were represented by competent and experienced counsel throughout the course of these negotiations. *Id.*

The parties' settlement discussions have resulted in a resolution embodied in the "Confidential Global Settlement Agreement and Release," ECF Nos. 76-1, 77-1 (the "Settlement Agreement"), which the parties have signed and which the parties and their respective counsel believe and agree represents a fair, reasonable, and adequate resolution of Plaintiffs' legal claims against Defendants. *Id.* The parties explicitly agree that Plaintiffs are a "prevailing party" and entitled to an award of attorneys' fees and costs pursuant to 29 U.S. C. § 216(b). *Id.*

The parties agree that they will take all appropriate steps to request and/or instruct the escrow agent, First American Trust FSB, to disburse the settlement payments to the Plaintiffs from the set aside funds pursuant to the terms of the Settlement Agreement and this consent decree. *Id.* at 3. The parties further agree that they will also take all appropriate steps to request and/or instruct the escrow agent, First American Trust FSB, to disburse the Court's award of attorneys' fees, as set forth in the remainder of the Court's Order, and the award of costs, as agreed upon between the parties, to

Plaintiffs' attorneys from the set aside funds pursuant to the terms of the Settlement Agreement and this consent decree. *Id.*

Finally, the parties agree that the Court shall retain jurisdiction over this action to resolve any additional issues regarding the settlement payments to Plaintiffs as detailed in the Settlement Agreement.[3] *Id.* The parties aver that, upon payment in full, the parties will file a stipulation of dismissal, which according to the terms of the Settlement Agreement, is already or will imminently be drafted and signed and will be held in trust until all payments have been completed. *Id.*; ECF No. 77-1 at 5–6.

Based on these terms as reported by the parties, the Court finds that the settlement is the result of contentious, arm's length negotiations, undertaken in good faith through counsel, and that the value of immediate recovery outweighs the risk of further protracted litigation. Accordingly, the Court will grant the parties' joint motion for entry of a consent decree approving their settlement, ECF No. 76, and a consent decree will be entered as detailed at the conclusion of this Order. As explained further below, the Court will administratively close this action upon the docketing of this Order, and will thereafter finally terminate the action upon receipt of the parties' stipulation of voluntarily dismissal, in accordance with the terms of the Settlement Agreement. ECF No. 77-1 at 5.

---

[3] On January 4, 2023, Plaintiffs filed a letter explaining that Defendants have "satisfied their wage payment and liquidated damages obligations to all of the Plaintiffs pursuant to the Confidential Global Settlement Agreement" and "the sole remaining issue [is] the award of attorneys' fees." ECF No. 83. For the reasons explained below, the Court will grant the joint motion for entry of a consent decree. Despite Plaintiffs' letter, to avoid meddling with the terms as agreed upon between the parties, the Court will enter a consent decree with the terms as originally submitted by the parties.

### 2.1.2 Joint Motion to File the Settlement Agreement in Redacted Form

The parties also move to file their settlement agreement in redacted form. ECF No. 77. The parties' proposed redactions are limited and tailored to cover only the specific amounts of the settlement payments to Plaintiffs. ECF No. 77-1. Further, the parties explain that the reason they seek the redactions is because "[a] condition of the Confidential Settlement Agreement is that Plaintiffs have agreed to not discuss, reveal, or otherwise disclose the terms and conditions of this Confidential Settlement Agreement." ECF No. 77 at 1–2. In other words, the confidentiality of the redacted terms was a material element of the settlement negotiation. *Id.* at 2. The parties additionally argue that good cause exists to file the settlement agreement in redacted form because it will "encourage[] parties to resolve disputes without further involvement of the courts" and that the settlement agreement would not be filed with the Court at all if the FLSA did not require Court approval of the settlement agreement. *Id.* However, as the Court has already noted, the law is unsettled as to whether court approval is required as to a stipulated settlement of individual FLSA claims.

The Court finds at this juncture that these proffered bases support good cause for filing the settlement agreement with the minimal redactions applied by the parties. *See, e.g.*, *Goesel v. Boley Intern. (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) ("[B]ecause there is potential public value to disclosing settlement terms, including amount, parties have to give the judge a reason for not disclosing them—and the fact that they don't want to disclose is not a reason."); *Swarthout v. Ryla Teleservices, Inc.*, No. 11-CV-21, 2012 WL 5361756, at *3 (N.D. Ind. Oct. 30, 2012) (finding good cause to seal where "assuring confidentiality of the settlement was a key and

material term of these parties' confidential Settlement Agreement," especially in FLSA cases where "[t]he parties do not have the option . . . to execute a private, confidential settlement agreement and then file a stipulation of dismissal").

While the *Swarthout* reasoning may not be an easy fit in light of *Goesel*, the parties do not proffer their confidentiality agreement as the sole reason to support good cause; they also explain that the confidentiality agreement was a material component of their negotiations and provide an additional argument that the redactions will "serve some social purpose." *Goesel*, 738 F.3d at 834–35. The Court is further persuaded in light of the fact that the necessity of Court approval of this particular settlement agreement is unclear. *See Goesel*, 738 F.3d at 834 ("But for the most part settlement terms are of potential public interest only when judicial approval of the terms is required, or they become an issue in a subsequent lawsuit, or the settlement is sought to be enforced."); *cf. Shekar v. Accurate Background, Inc.*, 428 F. Supp. 3d 9, 19–20 (E.D. Wis. 2019) ("[T]he settlement agreement was not relevant to my decision on the motion for class certification, and I did not review it. Therefore, it may remain sealed for now."). This is not to say, however, that the Court would not be swayed down the road by a challenge to the redactions filed by an interested member of the public.

## 2.2 Magistrate Judge Joseph's R&R on Plaintiffs' Fee Petition and the Parties' Objections Thereto

"When reviewing a magistrate's recommendation, the Court is obliged to analyze de novo 'those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Wicks*, No. 20-CR-143-JPS, 2021 WL 4786307, at *1 (E.D. Wis.

Oct. 13, 2021) (quoting 28 U.S.C. § 636(b)(1)(C)). The Seventh Circuit has explained that

> [d]e novo review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge or a special master while still engaging in an independent decision-making process.

*Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). "Being persuaded by the magistrate judge's reasoning, even after reviewing the case independently, is perfectly consistent with de novo review." *Id.* "That said, '[t]he magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it.'" *Farmer*, 2015 WL 13310280, at *1–2 (quoting *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009)).

### 2.2.1 The Parties' Objections to the R&R

Defendants raise three objections to the R&R. ECF No. 74. First, Defendants argue that Magistrate Judge Joseph erred in her recommendation that Plaintiffs' lead attorney, Robert Mihelich ("Attorney Mihelich"), is entitled to fees for the time he billed preparing for a deposition that did not end up occurring. *Id.* at 2. Second, Defendants contend that Magistrate Judge Joseph erred in her recommendation that Attorney Mihelich is entitled to fees for the time he billed researching and developing a successor liability claim against non-party County Prestress, LLC ("County Prestress"). *Id.* at 2–3. Finally, Defendants assert that Magistrate Judge Joseph erred in her recommendation that block billed

Case 2:19-cv-01623-JPS   Filed 02/06/23   Page 10 of 26   Document 84

time entries for related tasks that do not include administrative tasks (or other non-compensable tasks) are permissible, and that the time underlying such entries here is recoverable. *Id.* at 3.

For their part, Plaintiffs raise two objections to the R&R. ECF No. 75. First, they argue that Magistrate Judge Joseph erred in her recommendation that Attorney Mihelich's block billed entries containing administrative tasks should be struck. *Id.* at 1. Second, they claim that Magistrate Judge Joseph erred in her recommendation that Plaintiffs' second attorney, Kevin Scott's ("Attorney Scott"), time spent conferencing with Attorney Mihelich should be struck. *Id.* at 1–2. By way of background, Plaintiffs explained in their underlying motion that Attorney Scott was "retained to assist in matters related to corporate liability, succession, and general litigation assistance and to serve as second chair at trial." ECF No. 63 at 3.

### 2.2.1.1 Attorney Mihelich's Billing Entries for a Deposition That Did Not Occur

Contrary to Magistrate Judge Joseph's recommendation, Defendants argue that the time Attorney Mihelich spent preparing for a deposition that did not take place is not compensable. ECF No. 74 at 11. In support, Defendants explain that "Attorney Mihelich spent approximately 25 hours preparing to depose Doug Wagenbach and Craig Wagenbach, but ultimately, and for unknown reasons, he never deposed Craig Wagenbach." *Id.* The underlying entries are problematic not only because one of the depositions did not occur, Defendants contend, but also because "[t]he exact split" between the time spent preparing for the two depositions "is difficult to discern because Plaintiffs' counsel block billed time entries." *Id.* at 12.

Case 2:19-cv-01623-JPS   Filed 02/06/23   Page 11 of 26   Document 84

However, block billing is "not a prohibited practice" where block billed entries "generally represent related tasks" that are also compensable. *Farfaras v. Citizens Bank and Tr. of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006) (block billing is "not a prohibited practice"); *Alberth v. S. Lakes Plumbing & Heating*, No. 19-CV-62, 2021 WL 2779038, at *5 (E.D. Wis. July 2, 2021) (where block billed entries "generally represent related tasks," and such tasks are non-administrative, fees are recoverable); *see also Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. July 6, 2012) ("Although several entries combine discrete tasks without specifying the amount of time spent on each task, the combined tasks are related and were performed in connection with the same end-product. Thus, the Court will not reduce the hours . . . based on Defendants' block billing objection.").

Preparing for a deposition is decidedly a compensable task. Preparing for multiple depositions at the same time constitutes related tasks, particularly as such preparation undoubtedly includes an element of strategy as to which depositions are ultimately worth taking. Indeed, Attorney Mihelich avoided incurring additional fees as to himself—and as to Defendants' counsel as well—by opting not to pursue one of the two depositions that he considered taking. Defendants do not cite any authority holding that such time is not recoverable on a fee petition in either their underlying opposition brief, ECF No. 69, or their objections to the R&R, ECF No. 74. Therefore, the Court will adopt Magistrate Judge Joseph's recommendation and overrule Defendants' objections as to Attorney Mihelich's billing entries representing preparation for a deposition that did not ultimately occur.

**Attorney Mihelich's Billing Entries for Researching Successor Liability as to County Prestress**

Magistrate Judge Joseph recommended that Attorney Mihelich's time spent researching successor liability be recoverable. ECF No. 73 at 16. As to Attorney Scott's time spent on this issue, Magistrate Judge Joseph explained that she had already cut the majority of Attorney Scott's time on separate bases, which the Court addresses later in this Order. *Id.* In their underlying opposition brief and in their objections, Defendants argue that time spent researching successor liability is not recoverable because Federal Rule of Civil Procedure 25(c) renders it unnecessary. ECF No. 69 at 17; ECF No. 74 at 5 ("Plaintiffs could have filed a Rule 25 motion to substitute County Prestress in this action or to join it with the Defendants."). However, the same authority that Defendants cite in support of this proposition also teaches that "Rule 25(c) provides the procedural mechanism for substitution but relies on other substantive law to determine whether an 'interest' has been transferred." *Id.* (citing *Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 357 (7th Cir. 2014)). The *Sullivan* court, in turn, explains that "[n]ormally, a corporation purchasing the assets of another corporation does not assume the obligations of the transferor." *Sullivan*, 739 F.3d at 357.

In their underlying reply brief, Plaintiffs explained that the sale of Defendant Illini Precast, LLC to County Prestress was "reportedly an 'asset sale,'" which "implied that County Prestress could avoid successor liability." ECF No. 70 at 16. This aligns with *Sullivan*. Nonetheless, Plaintiffs clarify that successor liability as to County Prestress is available under the FLSA. *Id.* (citing *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 764

(7th Cir. 2013)). While the *Sullivan* rule is the norm—and applies under Wisconsin state law—"when liability is based on a violation of a federal statute relating to labor relations or employment, a federal common law standard of successor liability is applied that is more favorable to plaintiffs than most state-law standards to which the court might otherwise look." *Teed*, 711 F.3d at 764 (applying federal standard to the FLSA).

However, even under the more lenient federal standard, Plaintiffs would have had to move the Court and persuade it that "good reasons to withhold such liability" do not exist. *Id.* (discussing potential "possible reasons" that may be briefed so as to avoid successor liability). At a minimum, the issue required time and research, and a favorable result was not guaranteed. The time that Plaintiffs spent to secure an escrow agreement "in lieu of naming County Prestress as a party" was consequently also of import. ECF No. 70 at 18. Thus, the Court agrees with Magistrate Judge Joseph that "[t]his work is clearly of great value to clients, unlike a paper judgment against a 'judgment proof' entity." ECF No. 73 at 17. The Court adopts Magistrate Judge Joseph's recommendation and overrules Defendants' objections as to Attorney Mihelich's time spent researching successor liability.

### 2.2.1.3    Plaintiffs' Attorneys' Block Billing

Magistrate Judge Joseph recommends that, other than Plaintiffs' attorneys' block billed entries that include "administrative tasks for which an attorney is not entitled to fees," Plaintiffs' attorneys' block billing contains sufficiently related compensable tasks, such that the time is recoverable. ECF No. 73 at 10–11. In their objections, Defendants reiterate their argument from their underlying opposition brief; namely, that block billing "prevents the Court from fully analyzing the time spent on discrete

tasks" and thus "warrants an across the board reduction of fees." ECF No. 74 at 12 (quoting *Novoselsky v. Zvunca*, No. 17-CV-427-JPS, 2018 WL 941731, at *4 (E.D. Wis. Feb. 16, 2018)); ECF No. 69 at 12–15.

However, the majority of the cases cited by Defendants in both their objections and underlying opposition brief—that is, cases where a percentage reduction of fees was applied to block billed entries—involved entries that were block billed *and* had another problem. *See, e.g.*, *Novoselsky*, 2018 WL 941731, at *4 (applying percentage reduction to block billed entries that were also excessive or involved non-compensable clerical time); *Gibson*, 873 F. Supp. at 986–87 (applying percentage reduction to block billed entries that also involved conferring with co-counsel, included non-compensable clerical work, were vague, and/or were excessive). Defendants do not raise an individualized challenge to the block billed entries, other than their request for an across-the-board reduction. ECF No. 69 at 14; ECF No. 74 at 12. The Court thus agrees with Magistrate Judge Joseph that Plaintiffs' attorneys' block billed entries that do not include non-compensable administrative tasks are recoverable. The Court adopts Magistrate Judge Joseph's R&R on this point and overrules Defendants' objections.

### 2.2.1.4 Attorney Mihelich's Block Billed Entries Containing Administrative Tasks

As explained above, Magistrate Judge Joseph recommends striking all of Attorney Mihelich's time entries that include non-compensable administrative tasks. ECF No. 73 at 11–12. These entries are dated: 9/24/19; 10/1/19; 10/24/19; 11/5/19; 11/9/19; 11/14/19; 12/3/19; 12/4/19; 12/5/19; 12/17/19; 12/20/19; 1/17/20; 6/18/20; 6/19/20; 7/1/20; 11/6/20; 1/12/21; 1/20/21; 2/9/21; 2/19/21; 3/10/21; 4/28/21; 5/13/21; 7/25/21; 8/1/21; 8/4/21; 5/26/22; 8/2/22; and 8/11/22. *Id.* Magistrate Judge Joseph explains that the entries

must be struck because they are block billed and, therefore, "it is impossible to simply excise the uncompensable tasks from the compensable ones." *Id.* at 11.

In their objections, Plaintiffs argue that striking the entries in their entirety is overly punitive, as the block billed entries, in many cases, are lengthy and include only one administrative task among many others. ECF No. 75 at 3 (providing sample billing entry that was recommended to be struck: "**Continued review of file** and review of case law and research file regarding overtime exemptions and duties tests. Continued drafting of plaintiffs' separate responses to defendants' discovery requests. Finalize same. Travel to Burlington to meet with clients. Review discovery responses and discuss [redacted]. Review discovery requests and show them to clients. **Notarized signatures**.") (emphasis added). Plaintiffs contend that only the bolded portions of the sample entry represent administrative tasks, and therefore, the entries should have been percentage reduced rather than struck in their entirety. *Id.* at 4. Indeed, Plaintiffs note that in their underlying opposition brief, Defendants only requested an approximately 50% reduction as to these entries. *Id.*; *see also* ECF No. 69 at 24.

In their response to Plaintiffs' objections, Defendants now take the position that these entries, which are problematic because they are "extensively block billed <u>and</u> . . . contain[] administrative tasks," are properly struck. ECF No. 78 at 4. This is because "Plaintiffs gave Magistrate Judge Joseph no facts by which she would discern the number of hours spent on compensable tasks for the 29 stricken entries." *Id.*

The Court has independently reviewed all 29 stricken entries. In the Court's view, only five of the 29 entries (6/18/20, 7/1/20, 2/19/21, 5/13/21, and

7/25/21) include any compensable tasks, or contain more than one or two compensable tasks. The remainder are block billed entries of clearly, or at least arguably, entirely administrative or clerical tasks, or entries with only a minority of compensable tasks tacked on. Because the entries are block billed, and do not contain entirely compensable, related tasks, the Court is not able to determine the amount of time reasonably spent on compensable, versus non-compensable work. Thus, Magistrate Judge Joseph's recommendation to strike the entries is amply supported, and not overly punitive. *See Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."). The Court adopts Magistrate Judge Joseph's recommendation and overrules Plaintiffs' objection as to the 29 block billed entries containing (or involving entirely) administrative tasks.

### 2.2.1.5 Attorney Scott's Billing Entries Reflecting Time Spent Conferencing with Attorney Mihelich

Magistrate Judge Joseph recommends that all but six of Attorney Scott's 42 billing entries should be struck. ECF No. 73 at 12. First, Magistrate Judge Joseph finds that all 36 of the entries that she recommends be struck involve a conference between Attorney Scott and Attorney Mihelich, and for which Attorney Mihelich also bills (with scant discrepancy as to the dates). *Id.* (citing *Tchemkou v. Mukasey*, 517 F.3d 506 (7th Cir. 2008)). Second, the same 36 entries are block billed, rendering it unclear how long the conferences lasted. *Id.* at 13. Thus, as with the administrative tasks issue,

Magistrate Judge Joseph found that block billing was rendered problematic by a secondary issue: duplicative co-counsel conferences. *See Gibson*, 873 F. Supp. 2d at 986–87.

In their objections, Plaintiffs argue that Magistrate Judge Joseph struck Attorney Scott's entries as duplicative "[i]n part based on a faulty assumption that Attorney Scott [w]as a second chair needed to 'confer with primary counsel nearly every single day he works on the case.'" ECF No. 75 at 4. Plaintiffs explain that, instead, Attorney Scott was brought on to address the successor liability issue as to County Prestress given his unique experience in this area; therefore, the conferences do not constitute mere "hand holding" by Attorney Mihelich. *Id.* at 5–6.

However, other than stating the purpose of Attorney Scott's retention in Attorney Scott's declaration, *see supra* p. 11 (quoting ECF No. 63 at 3), Plaintiffs did not raise any arguments regarding Attorney Scott's specialties before Magistrate Judge Joseph or give Magistrate Judge Joseph any reason to believe that Attorney Scott was not a junior attorney to Attorney Mihelich; therefore, the arguments are waived. *Farmer*, 2015 WL 13310280, at *2 ("As an initial matter, the Court notes that Plaintiffs did not raise this argument to support their petition before Judge Valdez, and thus cannot rely on it here.") (quoting *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("[A]rguments not made before a magistrate judge are normally waived . . . there are good reasons for the rule that district courts should not consider arguments not raised initially before the magistrate judge, even though their review in cases governed by 28 U.S.C. § 636(b)(1) is de novo.")).

Nonetheless, the Seventh Circuit holds that because "internal meetings are not always the model of efficiency, and discussions of one case

or client easily can bleed over into other matters," "attorneys seeking reimbursement for internal meetings should identify explicitly the subject matter of their discussions so that [courts] may assess whether the amount of time recorded was reasonably expended." *Tchemkou*, 517 F.3d at 512. Magistrate Judge Joseph hinged the R&R on this issue on separate factors, as explained above, and did not consider the entries to determine whether the subject matter of the conferences was identified explicitly. The Court will do so.

The Court determines that the following of Attorney Scott's entries involving conferences with Attorney Mihelich identify the subject matter of the conference with sufficient specificity such that the Court is able to ascertain that the time spent was reasonable (and that the purpose of the conference was sufficiently related to the other tasks in the block billed entry) so as to render the entire block billed entry recoverable: 2/16/21; 2/18/21; 3/3/21; 4/1/21; 4/8/21; 4/9/21; 5/13/21; 5/24/21; 6/9/21; 6/14/21; 11/1/21; 4/5/22; 6/13/22; 7/8/22; 7/14/22; and 8/4/22. As to the other entries, the Court is unable to discern the purpose of the conference to determine whether the time spent was reasonable, and consequently whether the conference was sufficiently related to the other tasks listed in the block billed entries to render the entries recoverable. Thus, together with the 6.1 hours billed by Attorney Scott that Magistrate Judge Joseph found recoverable (the entries dated 2/21/21, 2/25/21, 2/28/21, 1/25/22, 7/18/22, and 7/19/22), the Court finds an additional 14.9 hours billed by Attorney Scott recoverable for the above-listed entries. At Attorney Scott's rate of $325/hour, this amounts to an additional $4,842.50 on top of the $140,582.50 fee award as recommended by Magistrate Judge Joseph, for a total of $145,425.

In all other respects, Magistrate Judge Joseph carefully described all of the facts and the law material to Plaintiffs' fee petition. The parties do not raise any further objections, and the Court finds no clear error such that it must reject or modify any other portion of the R&R. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."). The Court will, therefore, adopt in part and overrule in part Magistrate Judge Joseph's R&R in accordance with the reasoning set forth in this Order.

### 2.3 Plaintiffs' Civil Local Rule 7(h) Supplemental Fee Petition

Magistrate Judge Joseph determined, and the Court adopted that recommendation, that Plaintiffs' counsel may recover $9,540 for the 21.2 hours expended between August 18, 2022 and September 7, 2022 to draft and file the fee petition. ECF No. 73 at 17; ECF No. 71-1. That number is included in the $145,425 the Court has calculated as recoverable thus far. ECF No. 73 at 17. Plaintiffs' counsel requested an additional $2,700 to account for the time required to finalize the Settlement Agreement and file the appropriate pleadings to complete the litigation. *Id.* Magistrate Judge Joseph declined to award that additional $2,700 and recommended that the Court take up the issue once the fees are actually incurred. *Id.*

On November 15, 2022, Plaintiffs filed the supplemental fee petition with this Court, seeking fees for the time spent "in order to draft and complete all settlement documents and related filings with the Court, communicate with counsel for Defendants in order to complete the settlement documents and related pleadings, and to communicate with Plaintiffs (individually and collectively) regarding the status of the case and to complete the Settlement Agreement." ECF No. 80 at 2. Plaintiffs submit

billing records in support representing 11.1 hours of work for a total of $4,440 in attorneys' fees. ECF No. 81-1. They explain that this amount does not include the time spent filing objections to the R&R and that they "reserve the right to seek an award of th[o]se fees based on the outcome of their Objections." ECF No. 80 at 2.

In response, Defendants request that the Court deny without prejudice the supplemental fee petition and decide it together with any further supplemental fee petition as to time spent drafting the objections. ECF No. 82 at 1. Alternatively, Defendants argue that if the Court does consider the supplemental fee petition, certain entries should be struck because they redact the nature of conversations between Plaintiffs' counsel and Plaintiffs such that "one cannot determine why such conversations were necessary to the ultimate outcome in this case." *Id.* at 2. Defendants additionally note that certain hours in the supplemental fee petition relate to Plaintiffs' work on their objections, despite Plaintiffs' claim that the supplemental fee petition does not address time spent on the objections.

"While time expended in preparation of a fee petition is compensable, the Seventh Circuit has observed that lawyers often 'litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue.'" *Gibson*, 873 F. Supp. at 992 (quoting *Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988)). As a result, in determining the amount of fees a fee applicant should receive for preparing a fee petition, the Seventh Circuit considers "the comparison between the hours spent on the merits and the hours spent on the fee petitions." *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 554 (7th Cir. 1999).

In *Ustrak*, for example, the Seventh Circuit found 15 minutes of fee petition time per hour of time spent on the merits was too high and cut two-

thirds of the time spent on the fee petitions. *Ustrak*, 851 F.2d at 988. The *Ustrak* court noted this was generous, citing another Seventh Circuit case where only 1.6 hours of fee petition time was awarded as compared to 140 hours of merits time. *Id.* (citing *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988)); *see also Spegon*, 175 F.3d at 554 (awarding 1.6 hours of fee petition time compared to roughly 25 hours of merits time); *Gibson*, 873 F. Supp. 2d at 993 (where fees sought represented 10 minutes on fee petition for every hour on the merits, time spent on the fee petition should be cut in half).

Here, Plaintiffs' counsel billed, as to the merits, 347.5 hours of reasonable and recoverable time. This number includes the additional 14.9 hours of Attorney Scott's time calculated above. Between the fee petition and the supplemental fee petition, Plaintiffs' counsel requests, in total, fees for an additional 32.3 hours spent on fee petitions and on settlement approval, not including any further supplemental fee petition Plaintiffs reference as to the objections. As to Defendants' response to the supplemental fee petition, despite the redactions over the subject matter of Plaintiffs' counsel's discussions with Plaintiffs, disclosure of which is not necessarily privileged, the Court is able to glean based on surrounding entries and the information supplied in the motion itself[4] that this correspondence likely reasonably related to finalizing and obtaining signatures for the Settlement Agreement. The Court has already awarded the $9,540 spent on the fee petition as determined by Magistrate Judge

---

[4] *Attorneys' Fees—Fee Application—Billing Entries—Attorney-Client Privilege*, 26 No. 6 Fed. Litigator 13 (June 2011) ("When a fee request seeks recovery for services involving attorney-client communications, the general purpose of the services and the time charged must be described. Without this information, don't be surprised if the court finds the documentation lacking.").

Joseph, and will grant the supplemental fee petition for the additional $4,440. Thus, Plaintiffs will be awarded a total of $149,865. This represents the calculations arrived at by Magistrate Judge Joseph, ECF No. 73 at 18, plus 14.9 hours of Attorney Scott's time billed at $325/hour, plus the additional $4,440 requested in the supplemental fee petition.

The portion of the award as to fee petition and settlement work represents an approximately 10%—or 6 minutes on fee petition and settlement work per hour on the merits—ratio. In light of Seventh Circuit guidance, this is generous. Consequently, the Court will not consider any further supplemental fee petitions as to time spent drafting the objections, which is only bolstered by the fact that some of that time is covered by the first supplemental fee petition. *See Ustrak*, 851 F.2d at 987 ("Fee litigation has become a heavy burden on the federal courts. It can turn a simple civil case into two or even more cases—the case on the merits, the case for fees, the case for fees on appeal, the case for fees for proving fees, and so on ad infinitum, or at least ad nauseam."). Enough is enough.

3.    **CONCLUSION**

As explained in the body of this Order, the Court grants the parties' joint motion for entry of a consent decree approving their settlement. ECF No. 76. The Court grants the parties' joint motion to file the settlement agreement in redacted form. ECF No. 77. The Court adopts in part and overrules in part Magistrate Judge Joseph's R&R on Plaintiffs' fee petition and consequently grants in part and denies in part the underlying fee petition. ECF Nos. 60, 73. The Court overrules Defendants' objections to the R&R, ECF No. 74, and adopts in part and overrules in part Plaintiffs' objections to the R&R, ECF No. 75. The Court grants Plaintiffs' supplemental fee petition. ECF No. 80. The Court awards Plaintiffs

reasonable attorneys' fees in the amount of $149,865.00. The Court will not consider any further supplemental fee petition.

Accordingly,

**IT IS ORDERED** that the parties' joint motion for entry of a consent decree approving their settlement, ECF No. 76, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Court enters the following consent decree:

1.     The Court approves the Confidential Global Settlement Agreement and Release, as a fair, reasonable, and adequate resolution of Plaintiffs' legal claims against Defendants.

2.     Plaintiffs are a "prevailing party" and entitled to an award of attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

3.     The parties will take all appropriate steps to request and/or instruct the escrow agent, First American Trust FSB, to disburse the settlement payments to the Plaintiffs from the Set Aside funds pursuant to the terms of the Confidential Global Settlement Agreement and Release.

4.     The escrow agent, First American Trust FSB, is ordered to disburse the settlement payments to the Plaintiffs from the Set Aside funds pursuant to the terms of the Confidential Global Settlement Agreement and Release.

5.     The parties will also take all appropriate steps to request and/or instruct the escrow agent, First American Trust FSB, to disburse the award of attorneys' fees and costs to Plaintiffs' attorneys from the set aside funds.

6.     The escrow agent, First American Trust FSB, is ordered to disburse the award of attorneys' fees and costs to Plaintiffs' attorneys from the set aside funds

7.     The Court shall administratively close this matter, but will retain jurisdiction to resolve any additional issues regarding the settlement payments to the Plaintiffs as detailed in the parties' Confidential Global Settlement Agreement and Release.

8.     Upon payment in full, the parties shall file a stipulation of dismissal. At that time, the Court shall no longer have jurisdiction over this matter, and the Court will terminate the matter.

**IT IS FURTHER ORDERED** that the parties' joint motion to file their settlement agreement in redacted form, ECF No. 77, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Magistrate Judge Nancy Joseph's Report and Recommendation, ECF No. 73, be and the same is hereby **ADOPTED in part and OVERRULED in part**, and that Plaintiffs' motion for attorneys' fees, ECF No. 60, be and the same is consequently **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that Defendants' objections to Magistrate Judge Nancy Joseph's Report and Recommendation, ECF No. 74, be and the same are hereby **OVERRULED**;

**IT IS FURTHER ORDERED** that Plaintiffs' objections to Magistrate Judge Nancy Joseph's Report and Recommendation, ECF No. 75, be and the same are hereby **ADOPTED in part and OVERRULED in part**;

**IT IS FURTHER ORDERED** that Plaintiffs' supplemental motion for attorneys' fees, ECF No. 80, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs be awarded reasonable attorneys' fees in the amount of $149,865.00;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **ADMINISTRATIVELY CLOSED**; and

**IT IS FURTHER ORDERED** that the parties file a stipulation of dismissal in accordance with the Confidential Global Settlement Agreement and Release, at which time the Court will terminate the action.

Dated at Milwaukee, Wisconsin, this 6th day of February, 2023.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge